SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
--------------------------------------------------------------- x
UNITED METRO ENERGY CORPORATION,              :
                                              :
                        Plaintiff,            :     Index No. _____
                                              :
        - against -                           :
                                              :
PETROLEUM KINGS, LLC, ASMEL GONZALEZ          :     Complaint
a/k/a MEL GONZALEZ, and "JOHN DOE No. 1"      :
through "JOHN DOE No. 10," the names          :
being fictitious and unknown to Plaintiff,    :
                                              :
                        Defendants.           :
--------------------------------------------------------------- x

Plaintiff United Metro Energy Corporation ("UMEC"), by its attorneys Kramer Levin Naftalis & Frankel LLP, for its complaint alleges as follows:

Nature of the Action

1.      This case concerns defendants' systematic and surreptitious theft of more than 600,000 gallons of UMEC's fuel oil while defendants were acting as a distributor of UMEC's products.

2.      Plaintiff UMEC supplies home heating oil and other fuels throughout the New York metropolitan area. UMEC maintains its own fleet of delivery trucks and also contracts with third-party carriers such as defendant Petroleum Kings, LLC to fill UMEC's delivery orders.

3.      Acting through its drivers and in violation of the clear terms of its agreements with UMEC, over the course of a year Petroleum Kings secretly siphoned hundreds of thousands of gallons of UMEC's fuel products, routinely loading far more than needed to fill UMEC delivery orders and stealing that excess product. To date, Petroleum Kings has helped

KL3 3020154.1

itself to at least 673,000 gallons of excess fuel, resulting in losses to UMEC exceeding $2.5 million, plus interest.

4. By this action, UMEC seeks (i) recovery of its $2.3 million loss occasioned by defendants' conversion of UMEC fuel and breach of Petroleum Kings' agreements with UMEC, plus interest, (ii) an award of punitive damages to punish defendants for their systematic and willful theft, and (iii) enforcement against defendant Asmel Gonzalez, Petroleum Kings' principal, of his personal guaranty of Petroleum Kings' contractual performance.

5. Mr. Gonzalez has already been found by a federal court to have committed perjury and fraud in connection with matters related to UMEC's claims here. Shortly after UMEC's discovery of Petroleum Kings' theft, in December 2014 UMEC filed a complaint against Mr. Gonzalez for enforcement of his guaranty agreement in the United States District Court for the Eastern District of New York. The Court on April 11, 2015 held that it lacked subject matter jurisdiction—diversity—because Mr. Gonzalez was a New York domiciliary and not a Florida domiciliary, notwithstanding Mr. Gonzalez's prior sworn statements in his Florida voter registration, Florida driver's license applications, and Florida automobile registrations that he was a resident of Florida. However, the Court held that UMEC "correctly points out that if defendant is indeed a New York domiciliary"—as Mr. Gonzalez urged in moving to dismiss and as the Court ultimately found—then Mr. Gonzalez "has committed perjury and insurance fraud multiple times in Florida in connection with his automobile registrations and driver's license applications, and one time in connection with his voter registration. Defendant does not deny that." The Court also noted Mr. Gonzalez's "admitted record of dissembling" and "defrauding of insurance companies . . . ."

2

6. As set forth in greater detail below, defendants' misconduct here is of a piece with the extensive misconduct found by the Federal Court earlier this week.

## The Parties, Jurisdiction, and Venue

7. Plaintiff UMEC is a Delaware corporation with its principal place of business at 500 Kingsland Avenue, Brooklyn, New York. UMEC supplies and delivers home heating oil, ultra-low sulfur diesel, biodiesel, and other fuels throughout the New York metropolitan area from its terminals in Brooklyn and Long Island. UMEC's customers include Metro North Railroad and the New York State Office of General Services.

8. Upon information and belief, defendant Petroleum Kings is a Delaware limited liability company with its principal place of business at 1 Amanda Court, White Plains, New York. Petroleum Kings purports to provide delivery service of fuel oil products throughout Westchester and the Bronx. Petroleum Kings also purports to supply fuel oil to businesses and residences. Petroleum Kings proclaims on its website that the company "provides exceptional bulk carrier services with a commitment to excellence in all we do," and "maintain[s] a 'zero tolerance' policy for the slightest infraction" by its drivers.

9. Upon information and belief, defendant Asmel Gonzalez is the president of Petroleum Kings. Mr. Gonzalez resides in White Plains, New York.

10. Defendants John Doe 1 through John Doe 10 are current or former Petroleum Kings drivers who participated in Petroleum Kings' theft. Their identity is unknown at this time.

11. Upon information and belief, all defendants reside in and have done business in the State of New York, and the claims that give rise to the complaint occurred here.

12. Venue is proper in this County pursuant to CPLR § 503.

Background: The Agreements and Personal Guaranty

13. From time to time UMEC contracts with third-party carriers to deliver fuel oil to UMEC customers. UMEC requires those third-party carriers to sign several agreements, including a Terminal Access Agreement and an Independent Contractor Agreement.

14. On April 15, 2013, UMEC and Petroleum Kings entered into a series of agreements pursuant to which Petroleum Kings would deliver fuel oil to UMEC's customers. The Terminal Access Agreement (Exh. A, attached) sets out the obligations of each party. The Independent Contractor Agreement sets out a pricing schedule for UMEC's fuels.

15. Under the Terminal Access Agreement, Petroleum Kings' drivers "must obtain separate approval from UMEC before being permitted to use the Terminal, which approval may be rescinded by UMEC at any time in its sole discretion." (*Id.* ¶ 9).

16. Also under the Terminal Access Agreement, UMEC regulates Petroleum Kings drivers' access to UMEC's fueling terminal—and to the fuel itself—using electronic access cards. As set forth at Paragraph 9 of the Terminal Access Agreement, these cards "activate a card-lock system which controls the terminal entry and exit gates, truck loading racks and automated accounting equipment."

17. Each access card is coded with an identification number uniquely identified with its driver and carrier (*id.* ¶ 9(c)), allowing UMEC to account for every gallon of fuel loaded from its terminal. (*Id.* ¶ 9(b)). The Terminal Access Agreement provides that access cards "are for the designated driver only and are not transferable or interchangeable between or among drivers." (*Id.* ¶ 9(c)). The access cards "remain the property of UMEC at all times" (*id.* ¶ 9(a)) and "under no conditions will the card[s] be duplicated." (*Id.* at Addendum C).

18. In addition, Paragraph 9(d) of the Terminal Access Agreement provides that Petroleum Kings shall "pay UMEC the value of any Products lost, stolen or unaccounted for at the Terminal and charged or obtained by means of the misappropriation or unauthorized use or duplication of any Access Card issued to [Petroleum Kings] . . . ." Paragraph 9(g) provides that "In the event [Petroleum Kings] shall provide Access Cards to third-party common carriers not under the direct control of [Petroleum Kings], [Petroleum Kings] shall be responsible for all charges related to all Products withdrawn from the Terminal by means of such Customer Number or Access Card issued to [Petroleum Kings]."

19. Under an Addendum to the Terminal Access Agreement, each driver agreed in writing to be bound by these terms upon receipt of an access card. (*Id.* at Addendum C). The Addendum goes on to provide that Petroleum Kings "agrees to assume financial responsibility for all products withdrawn using the cards assigned to [Petroleum Kings], until such time as the card is returned to UMEC or the card is reported lost or stolen. It is the responsibility for [Petroleum Kings] to request that a card be invalidated if the driver is transferred or terminates employment."

20. Finally, Paragraph 6 of the Terminal Access Agreement makes Petroleum Kings liable for damages and attorneys' fees incurred on account of Petroleum Kings' breach:

> [Petroleum Kings] agrees to defend, hold harmless and indemnify UMEC . . . from and against any and all claims, liabilities, expenses (including reasonable attorneys' fees), losses, damages, demands, fines, penalties and causes of action (collectively, "Claims") caused by, arising from, or related to the actual or alleged acts or omissions taken or not taken under this Agreement by [Petroleum Kings], its Authorized Representatives or any of their respective subcontractors, agents, or employees, including without limitation the movement of vehicles to, from and in the Terminal.

KL3 3020154.1

21. Under the Guaranty Agreement (Exh. B, attached), defendant Asmel Gonzalez provided a personal and unlimited guaranty in favor of UMEC for Petroleum Kings' obligations.

22. The Guaranty Agreement provides that Mr. Gonzalez as Guarantor:

> irrevocably and unconditionally guarantees without prior notice, prompt payment, and not merely collection, and performance to UMEC when due of any and all obligations of [Petroleum Kings] to UMEC, whether direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising or acquired and in whatever form, together with all interest thereon and all reasonable attorneys' fees, costs and expenses of collection incurred by UMEC in enforcing any such obligation or in enforcing this Guaranty against Guarantor (hereinafter the "Obligations"). Guarantor represents that it expects to derive advantage from each and every extension of credit to, or business transaction between UMEC and [Petroleum Kings].

23. The Guaranty Agreement further provides:

> This shall be a continuing and absolute guaranty and all Obligations to which it applies or may apply under the terms hereof, shall be conclusively presumed to have been created in reliance thereon. This guaranty is a guaranty of payment and not merely of collection . . . . Upon any default in payment of any such Obligations, the undersigned will unconditionally pay to UMEC the amount thereof forthwith and also will pay an amount or amounts necessary to compensate UMEC for such default in payment or in compliance with any other terms connected with such Obligations, all without suit or any step being required to be taken by UMEC to enforce such Obligations or to realize on any security which it may hold therefor.

<u>UMEC Discovers Petroleum Kings' Theft</u>

24. Every customer order received by UMEC is processed through the company's digital dispatch system. The dispatcher reviews the orders and assigns each one to a carrier for delivery to the customers the following day. Using access cards issued under terminal access agreements, drivers for UMEC's third-party carriers access the UMEC terminal and take

KL3 3020154.1

possession of fuel for delivery to UMEC customers in accordance with their assigned delivery orders. The drivers load the fuel themselves, unassisted by UMEC personnel.

25. UMEC uses a separate computer system in the loading terminal: the Top Tech system. This system reads the information from the drivers' access cards and accounts for all gallons loaded at the terminal. Each time a driver loads fuel at the terminal, the Top Tech system generates two identical bills of lading. The driver signs one copy, which is left with the terminal operator, and retains the other copy for its carrier's records.

26. UMEC's recent reconciliation of the dispatch records with the terminal records has revealed that, from October 2013 through October 2014, Petroleum Kings and its drivers regularly loaded far more fuel than necessary to fill their assigned UMEC delivery orders. During that period, and in violation of the terms of the parties' Terminal Access Agreement, Petroleum Kings improperly loaded far more UMEC fuel than UMEC had authorized—at least 673,000 gallons of excess fuel.

27. After discovering Petroleum Kings' theft, on November 7, 2014, UMEC sent to Petroleum Kings a written demand for payment.

28. In the demand letter, UMEC stated that "Petroleum Kings received and apparently misappropriated" UMEC fuel oil, yet had "taken no action to either return or make payment for the Missing Product, which was never delivered by Petroleum Kings, as required, to designated UMEC customers." To date, however, Petroleum Kings has refused to compensate UMEC for Petroleum Kings' theft and breach of contract.

Prior Proceedings

29. On December 19, 2014, UMEC commenced an action in federal court against Mr. Gonzalez, as guarantor of Petroleum Kings' obligations to UMEC. (*See United*

7

*Metro Energy Corp. v. Gonzalez*, 14 CV 7410 (BMC) (E.D.N.Y. filed Dec. 19, 2014)). Federal jurisdiction was premised on diversity of citizenship, as the public record indicated that Mr. Gonzalez was a Florida citizen. For instance, Mr. Gonzalez: (i) registered to vote in Florida in 2012—which required him to swear under penalty of perjury that he was a legal resident of the state of Florida, (ii) applied for several driver's licenses in Florida—which also required him to swear under penalty of perjury that he was a Florida resident, (iii) registered numerous cars in Florida, (iv) obtained Florida insurance on his various cars, (v) owns property in Florida, (vi) has a significant number of relatives in Florida, (vii) submitted an application in 2012 on behalf of Petroleum Kings for permission to do business in Florida and has since maintained Petroleum Kings' registration with the Florida Secretary of State, and (viii) has maintained a bank account in Florida since 2007.

30. Alleging that he was not a Florida citizen and thus that diversity was lacking, Mr. Gonzalez moved to dismiss the complaint for lack of subject matter jurisdiction on January 29, 2015. At a pre-motion conference conducted on the record in connection with Mr. Gonzalez's motion to dismiss, Mr. Gonzalez's counsel acknowledged that Mr. Gonzalez bore the burden of proving a change of citizenship from Florida to New York. Upon filing his motion papers, however, Mr. Gonzalez attempted to retract this on-the-record concession and argued he had lived in New York since coming to the United States in 1995.

31. On April 11, 2015, the federal District Court granted Mr. Gonzalez's motion to dismiss on jurisdictional grounds. (Exh. C, attached). However, the Court noted that if Mr. Gonzalez was in fact a citizen of New York as he had claimed to be and as the Court ultimately concluded, then Mr. Gonzalez "has committed perjury and insurance fraud multiple times in Florida in connection with his automobile registrations and driver's license applications,

and one time in connection with his voter registration." (*Id.* at 3). Mr. Gonzalez, the Court noted, "does not deny that." (*Id.*). The Court also cited Mr. Gonzalez's "admitted record of dissembling" and "defrauding of the insurance companies by listing a Florida address . . . ." (*Id.* at 4–5).

32.     Defendants' misconduct here is of a piece with the extensive misconduct found by the Federal Court earlier this week.

### First Cause of Action for Breach of Contract against Petroleum Kings

33.     UMEC repeats and realleges the allegations contained in paragraphs 1 through 32 above.

34.     UMEC and Petroleum Kings entered into a series of binding agreements under which Petroleum Kings agreed among other things to (i) distribute UMEC's fuel to UMEC's customers in accordance with UMEC's delivery orders, and (ii) compensate UMEC for any loss occasioned by misuse of access cards registered to Petroleum Kings.

35.     Petroleum Kings breached its agreements with UMEC when (i) acting through its employees, agents or otherwise, Petroleum Kings loaded and retained hundreds of thousands of gallons of fuel belonging to UMEC that neither Petroleum Kings nor its drivers were authorized to load, and (ii) Petroleum Kings failed to compensate UMEC for UMEC's loss.

36.     At the time of Petroleum Kings' breach, UMEC was ready, willing, and able to perform all its obligations under the parties' agreements.

37.     As a result of Petroleum Kings' breach, UMEC has been damaged in an amount to be determined at trial, but not less than $2.5 million, plus interest.

Second Cause of Action for Conversion against Petroleum Kings and John Does 1 through 10

38. UMEC repeats and realleges the allegations contained in paragraphs 1 through 37 above.

39. Beginning in or about October 2013, Petroleum Kings began loading its trucks with UMEC's fuel in quantities far exceeding those authorized by UMEC.

40. To date, Petroleum Kings has refused to return the excess fuel or to compensate UMEC for the value of that excess fuel, and is presently wrongfully, illegally, and tortiously maintaining control over UMEC's property.

41. The value of the UMEC property converted by Petroleum Kings is not less than $2.5 million.

42. By reason of the foregoing, UMEC has been damaged in an amount to be determined at trial, but not less than $2.5 million, plus interest.

43. Petroleum Kings' conversion was willful, wanton, and intentional.

44. By reason of the foregoing, UMEC is also entitled to punitive damages in the amount of not less than $5 million.

Third Cause of Action for Breach of the Guaranty Agreement against Asmel Gonzalez

45. UMEC repeats and realleges the allegations contained in paragraphs 1 through 44 above.

46. The above-described breaches of Petroleum Kings' agreements with UMEC remain uncured. Accordingly, defendant Asmel Gonzalez is liable to UMEC under the Guaranty Agreement for the full value of UMEC's converted fuel, plus interest, and any other damage caused by Petroleum Kings' breach of contract.

KL3 3020154.1

47. In addition, under the Guaranty Agreement, Mr. Gonzalez is liable to UMEC for "all reasonable attorneys' fees, costs and expenses of collection incurred by UMEC" in enforcing its agreements with Mr. Gonzalez and Petroleum Kings. (Exh. B). Accordingly, UMEC is entitled to a money judgment against Mr. Gonzalez for all such amounts.

Wherefore, UMEC demands judgment as follows:

(i) awarding UMEC compensatory damages in an amount to be determined at trial, but not less than $2.5 million plus pre-judgment interest;

(ii) awarding UMEC punitive damages of not less than $5 million on its cause of action for conversion;

(iii) awarding UMEC costs, including attorneys' fees; and

(iv) awarding UMEC such other and further relief as the Court deems just and proper.

Dated: New York, New York
April 17, 2015

Kramer Levin Naftalis & Frankel LLP

By: _____
Jonathan M. Wagner
Benjamin M. Arrow

1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100

Attorneys for Plaintiff United Metro Energy Corporation

11